# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**TAMAIRA RIVERA,**

                **Plaintiff,**

**v.**                                       **Case No: 6:23-cv-2113-PGB-DCI**

**U.S ATTORNEY GENERAL,**

                **Defendant.**

---

# ORDER[1]

    This cause comes before the Court for consideration with a hearing on the following motions:

| | |
|---|---|
| **MOTION:** | **Defendant's Motion for Summary Judgment (Doc. 45)** |
| **FILED:** | **April 23, 2025** |
| **MOTION:** | **Plaintiff's Motion for Summary Judgment (Doc. 46)** |
| **FILED:** | **May 2, 2025** |

**THEREON** it is **ORDERED** that Defendant's Motion (Doc. 45) is **GRANTED in part**; and Plaintiff's Motion (Doc. 46) is **DENIED**.

## I.    Procedural History

    Tamaira Rivera (Plaintiff), a former Unit Chief Immigration Judge (UCIJ) in the Department of Justice, Executive Office of Immigration Review (EOIR) brings this case against the United States Attorney General (Defendant) pursuant to Title VII of the Civil Rights Act of

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have the undersigned conduct any and all proceedings. Doc. 25.

1964 (Title VII); the Americans with Disabilities Act (the ADA); the Age Discrimination in Employment Act (the ADEA); the Rehabilitation Act of 1973 (the Rehabilitation Act); and the Fifth Amendment to the Constitution. Doc. 17.

Before the Court are the parties' cross motions for summary judgment. Docs. 45, 46. Defendant seeks summary judgment on the entirety of Plaintiff's claims (Doc. 45, Defendant's Motion), but Plaintiff limits her request for relief to her disability discrimination claim (Doc. 46, Plaintiff's Motion). The parties have filed Reponses (Docs. 47, 50) and Replies (Docs. 51, 52), and Plaintiff submitted a supplement to correct an error (Doc. 53).[2]

On August 28, 2025, the Court conducted a hearing related to Plaintiff's disability discrimination claim. In the cross-motions, both parties analyze Plaintiff's disability discrimination claim—Count I—as if Plaintiff brought it pursuant to the Rehabilitation Act. Docs. 45, 46. Plaintiff, however, only directly references the ADA in Count I—the sole disability discrimination claim—with no mention of the Rehabilitation Act.[3] Doc. 17. Since Plaintiff was a federal employee and not covered under the ADA, the Court questioned her decision to cite to the ADA. To clarify the issue, the Court conducted a hearing and Plaintiff's counsel conceded that Count I is more appropriately brought pursuant to the Rehabilitation Act. With no opposition from Defendant, the Court found that Plaintiff's reference to the ADA was a typographical error and that it would consider the summary judgment arguments under the Rehabilitation Act.[4]

---

[2] Plaintiff states that she supplements her Response because Exhibit A was mistakenly labeled Exhibit L.

[3] Plaintiff makes a general reference to the Rehabilitation Act elsewhere in the Amended Complaint. *See* Doc. 17 at 2, 16.

[4] The Rehabilitation Act is governed by the same standards as the ADA. *Sutton v. Lader*, 185 F.3d 1203, 1208 n.5 (11th Cir. 1999) (citation omitted).

Considering the Plaintiff's concession, the Court also raised the issue of available remedies under the Rehabilitation Act. With the Court's permission, the parties filed supplemental briefs on the issue. Docs. 57, 58.[5]

The matter is ripe for review, and upon due consideration, the Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's claim that Defendant discriminated against her on the basis of her sex, national origin, and age when it denied her request for a hardship transfer. Defendant's Motion is otherwise denied, as is Plaintiff's Motion.

## II.    Background

In March 2021, Plaintiff started her employment with the EOIR as a UCIJ at the Richmond Immigration Adjudication Center (RIAC). The RIAC is an adjudication center and not a "court." Doc. 45-3 at 18, 65. As such, it is not "public-facing" and charging documents are not filed at that facility. *Id*. There are two Adjudication Centers—Fort Worth, Texas and Richmond, Virginia— and they are the only locations with Unit Chief Immigration Judges. Docs. 45-3 at 17, 84, 95 to 96; 46-2 at 84; 46-20 at 6; 46-21 at 14 to 15, 67.

The Attorney General appointed Plaintiff as a UCIJ at the RIAC for a period not to exceed 24 months. Docs. 45-2 at 1, 3, 4; 45-13 at 1; 46-21 at 9. The position, however, could become permanent. Docs. 45-3 at 28; 46-21 at 16. As a UCIJ, in addition to her duties as a traditional immigration judge, Plaintiff was a supervisor of a unit consisting of an attorney and an assistant.

---

[5] In its Motion, Defendant mentions that suit under the Rehabilitation Act is the only remedy for the disability discrimination claim but does not argue that point as a basis to dismiss Count I. *See* Doc. 45 at 10 to 21. Despite its agreement at the hearing that the Court treat the reference to the ADA as a typographical error and that Plaintiff meant to plead Count I under the Rehabilitation Act, Defendant includes a footnote in its supplemental brief to note that "Plaintiff, other than perfunctory reference at the outset and in conclusion, fails to identify the Rehabilitation Act as a basis for any of her claims." Doc. 57 at 1. Defendant's reason for making this statement is unclear and the Court is inclined to proceed with review of the disability claim under the Rehabilitation Act.

Docs. 45-3 at 64 to 65; 46-21 at 10.  The record reflects that, at least in some respects, Plaintiff's immigration case docket was larger than any other UCIJ at the RIAC.  Docs. 46-17 at 9; 46-20 at 8, 11.

When Defendant hired Plaintiff as a UCIJ, Plaintiff moved from Orlando, Florida to Richmond, Virginia.  Doc. 46-21 at 40.  Plaintiff, a parent of a school-aged child, expected that her mother and sister would also move to Richmond.  Docs. 45-4 at 1.  Plaintiff's mother, however, has Alzheimer's Disease and her conditioned worsened.  *Id.*  Ultimately, Plaintiff's mother and sister did not make the move to Richmond.  *Id.*

In or about October 2021, Plaintiff began her quest to relocate back to Orlando but continue working for the EOIR.  The parties describe the "three vehicles" Plaintiff utilized to do so.  Docs. 45 at 3; 46 at 2.  Specifically, Plaintiff submitted the following to the EOIR: (1) requests for hardship or regular transfers to Orlando; (2) an application for a position as an immigration judge with the Orlando Immigration Court; and (3) request(s) for a reasonable accommodation due to her alleged disability.  *Id.*

With respect to the transfer requests, on October 5, 2021, Plaintiff contacted the EOIR to request a regular and hardship transfer to the Orlando Immigration Court.  Doc. 45-5.  The EOIR placed Plaintiff on both registers effective October 5, 2021.  *Id.*  On February 1, 2022, Principal Deputy Chief Immigration Judge Dan Weiss (Deputy Weiss)[6] emailed Plaintiff and advised her that a voluntary reassignment opportunity may be available for the Orlando Immigration Court location and presented Plaintiff with an opportunity to state the hardship she believed justified "preferential treatment for reassignment."  Doc. 45-9 at 9.

---

[6] Some or all of the individuals Plaintiff deposed in this case are no longer with the EOIR or are in different positions.  The Court refers to the job title that was in place during Plaintiff's employment.

On February 2, 2022, Plaintiff responded to Deputy Weiss's email and "attached [her] formal hardship transfer request that details the circumstances[.]" *Id*. at 7. In a letter dated February 2, 2022, Plaintiff explained that when she applied for and accepted the position as UCIJ in Richmond, she "did so with the knowledge and assurances that [her] sister and [her] mother would move to Richmond with [Plaintiff]." 45-4. Plaintiff provided information regarding her mother's health, her sister's role as "primary caretaker," and Plaintiff's involvement in the "substantial support of [her] mother's care." *Id*. Plaintiff stated further that when she was in Orlando, her sister helped with her son's supervision and care. *Id*. Plaintiff also discussed the deterioration of her mother's medical condition since Plaintiff's move to Richmond. *Id*.

Plaintiff adds in the letter that in July 2021, Plaintiff "began experiencing health issues for which [Plaintiff is] seeking medical attention" and that Plaintiff is "experiencing symptoms related to extreme fatigue and pain." *Id*. Plaintiff requested the hardship transfer to Orlando, Florida "where [she could] help provide long-term support to [her] family and where [Plaintiff has] a support system that can help [her] through [her] new challenges." *Id*.

On February 27, 2022, Deputy Weiss sent Plaintiff an email entitled "Hardship Reassignment" and advised her that the EOIR would "not be able to offer [her] a hardship transfer opportunity to Orlando." Doc. 50-22 at 2.

In or about October 2021, while Plaintiff was still employed as a UCIJ in Richmond, Plaintiff applied to be an immigration judge in Orlando, Florida. Docs. 46 at 2; 46-18 at 4; 46-18 at 4; 46-21 at 14; 46-23 at 3; 50-21 at 37. Plaintiff was not selected for the position. Doc. 46-18 at 4. During this time, Plaintiff also submitted a request for an accommodation regarding her "work location." Doc. 46-4. Specifically, on December 9, 2021, Plaintiff emailed the EOIR and requested to "be allowed to work remotely full time in Orlando, Florida in order to assist [her]

family and receive support for [her] son and [herself]." *Id*. Plaintiff requested to "continue working remotely as a UCIJ for the [RIAC], but from Orlando, Florida." *Id*.

On February 7, 2022, the EOIR responded via email and stated that it was unclear if Plaintiff was a qualified individual with a disability as the "EOIR can only provide a reasonable accommodation to you if *you* are a qualified individual with a disability." Doc. 46-5 at 2 (emphasis in original). The EOIR's response provided that if Plaintiff was seeking a reasonable accommodation based on her own disability that she should submit a DOJ 100A form along with supporting medical documentation. *Id*.

On March 2, 2022, Plaintiff submitted a VA Benefits Summary letter to the EOIR with a letter "explain[ing] [her] request for a reasonable accommodation." Doc. 46-14 at 2. On March 3, 2022, Plaintiff emailed a to the EOIR a "Disability Breakdown Letter" from the VA which included a list of "service-connected disabilities[.]" *Id*. at 2 to 3. Plaintiff also submitted to the EOIR a letter from her therapist regarding her mental condition. *Id*. at 3.

In addition, Plaintiff executed a DOJ 100A Reasonable Accommodation dated May 3, 2022, wherein Plaintiff represented that she has a disabling condition. Doc. 46-11. Plaintiff stated on the form that she suffers from adjustment disorder with anxiety, depressive disorder, insomnia, sleep disorder, IBS, and vaso-vagal syncope and that her anxiety and depression "creates acute mental anguish" and does not "allow her to function to her fullest potential." *Id*. Plaintiff stated on the form that her anxiety "leads to prolonged crying spells, fatalistic thinking and disordered sleep/insomnia which keeps [her] awake for days or allow[s] very little sleep (2-3 hours a night) for days on end." *Id*. She stated on the form that she has "loss of focus, dizziness, exhaustion, [and] extreme irritability." *Id*. Plaintiff stated that "[t]his situation leads to prolonged periods of

fretting, panic attacks and persistent insomnia which trigger [her] vaso-vagal response, which in turn incapacitates [her] for hours as [she] recover[s] from a fainting or near-fainting spell." *Id*.

On March 26, 2022, Plaintiff sent a letter to Michelle Curry, the Reasonable Accommodations Coordinator, regarding the request for the reasonable accommodation and reported additional information about her physical and medical condition. Doc. 46-8.

On May 26, 2022, the EOIR denied Plaintiff's request for a reasonable accommodation. Doc. 46-13. According to the denial letter, the reason for the denial was as follows:

> A reasonable accommodation in the form of a grant of remote work from Orlando, Florida would not serve the purpose of removing workplace barriers to allow you to perform the essential functions of your position. Accordingly, we cannot grant your request to work remotely from Orlando, as your request is beyond the scope of Reasonable Accommodations.

*Id*. The EOIR also issued a letter dated May 31, 2022 and provided more detail regarding the denial. Doc. 46-14.

Days before the EOIR denied Plaintiff's requested accommodation, Plaintiff submitted a Family Medical Leave Act (FMLA) request for a reduced work schedule with a remote work component." Doc. 45-6 at 10.[7] With respect to the FMLA request, Plaintiff characterizes the request as leave to work "part-time" out of Orlando and provides that this specific request was denied. Doc. 46-21 at 54 to 55. Even so, in June 2022, the EOIR granted Plaintiff twelve weeks of FMLA Leave. *Id*. at 73; Docs. 45-6 at 11; 45-13 at 4.

On July 13, 2022, Plaintiff contacted the Equal Employment Opportunity Program (EEO) and alleged that she was discriminated against on the basis of age, sex, disability, and race, and claimed harassment, hostile work environment, disparate treatment, and that the EOIR wrongfully

---

[7] Plaintiff does not include in the Amended Complaint a claim under the FMLA, but the request is relevant to the background and to give further context of what transpired next between the parties.

denied her reasonable accommodation.  Doc. 45-13 (EEO Complaint No. EOI-2022-000947).  Plaintiff declined to participate in alternative dispute resolution.  *Id*. at 3.  Plaintiff filed a formal complaint with the EEO on August 29, 2022.  *Id*. at 2.  The Department of Justice dismissed Plaintiff's EEO because she filed a complaint in federal court.  Doc. 45-16.

On September 6, 2022, while still on FMLA leave, Plaintiff emailed Deputy Weiss to renew the request for reconsideration of the hardship transfer denial.  Doc. 45-9.  Deputy Weiss, however, denied the request.  *Id*.  On September 26, 2022, Plaintiff resigned from her employment effective October 8, 2022, without returning from FMLA leave.  Doc. 50-15.

On January 31, 2023, Plaintiff applied for a new term appointment as an immigration judge.  Doc. 45-15.  Plaintiff interviewed but claims that she "was not offered a position in the place that [she] specifically said [she] wanted to go, the one and only place, which was Orlando."  Doc. 46-21 at 14, 61.  Plaintiff filed a second administrative EEO complaint based on her non-selection.  *Id*.  Doc. 45-15 (EEO Complaint No. EOI-2023-000681).  The Department of Justice Final Agency Decision stated that "[t]he record does not support complainant's claim that the EOIR subjected her to disparate treatment because of her disability or prior EEO activity in failing to select complainant for the position at issue in this case."  *Id*.

### III.    Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*,

477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one-party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555-56.

IV.    **Discussion**

a.    **Disability Discrimination – Rehabilitation Act**

As discussed *supra*, Plaintiff clarified at the August 28, 2025 hearing that she brings her disability discrimination claim under the Rehabilitation Act and not the ADA as she pled it in the Amended Complaint.  *See also* Doc. 58.  Even though Defendant moves for summary judgment on all claims, Plaintiff's request for summary judgment relates only to the disability claim.  Docs. 45, 46.  The Rehabilitation Act "provides the exclusive remedy for federal employees seeking damages and relief for work-place discrimination based on disability."  *Lapar v. Potter*, 395 F. Supp. 2d 1152, 1157 (M.D. Fla. 2005) (citation omitted).  Under both the ADA and Rehabilitation Act, the same standards are used to establish liability for discrimination.  *J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)).

"[T]o establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must demonstrate that he (1) has a disability, (2) he is otherwise qualified for the position, and (3) he was subjected to unlawful discrimination a result of his disability."  *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (citation omitted).  A "qualified individual" is a person who, with or without reasonable accommodations, is able to perform the essential functions of the job he holds or desires.  42 U.S.C. § 12111(8). "[A] plaintiff 'must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation."  *D'Angelo v. ConAgra Foods*, 422 F.3d 1220, 1229 (11th Cir. 2005)(quoting *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)).

In Count I of the Amended Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of her disability when Defendant denied her a reasonable accommodation and constructively discharged her from employment.  Doc. 17 at 11 to 12.  In her Motion, Plaintiff does not mention "constructive discharge" but contends that she is entitled to summary judgment as a matter of law based on Defendant's failure to provide a reasonable accommodation.  Doc. 46.  Defendant also moves for summary judgment on Plaintiff's discrimination claim.  Doc. 45.

The Court will first address two points Plaintiff raises in her Motion that do not necessarily overlap with Defendant's cross argument for summary judgment.  Specifically, Plaintiff contends that she is entitled to summary judgment because the undisputed facts reflect that (1) Defendant failed to even consider her mental disability when it denied her request for an accommodation; and (2) Defendant failed to engage in an interactive process regarding the accommodations.  Doc. 46.  The Court will discuss these arguments and then address the parties' dueling positions related to Defendant's alleged failure to provide a reasonable accommodation.

### 1.    Failure to Consider Mental Disability and Engage in the Interactive Process

Plaintiff contends that the undisputed material facts reflect that the EOIR failed to provide a reasonable accommodation to Plaintiff as the Rehabilitation Act requires.  Doc. 46 at 19.  As one basis for relief, Plaintiff contends that:

> [The] EOIR Reasonable Accommodation never addressed [Plaintiff's] mental impairments in its decision denying reasonable accommodation despite the fact that [Plaintiff] indicated in her May 3, 2022 application for reasonable accommodation. . . that she suffered primarily from mental impairments and included not only documents from the VA that indicated that [Plaintiff] had mental impairments but also a detailed letter from [Plaintiff's] mental health therapist detailing [Plaintiff's] impairments and the impact that the mental impairments had on [Plaintiff's] ability to perform her job duties, and how relocation to Florida would alleviate [Plaintiff's] mental impairments.  Instead, EOIR based its denial solely on [Plaintiff's] impairment of vaso-vagal syncope.  EOIR erroneously indicated that a relocation would not alleviate the conditions that caused [Plaintiff's] vaso-vagal syncope.

Doc. 46 at 19.  Plaintiff's statement of the record is not accurate.  A review of the EOIR denial reflects that the EOIR discussed **both** Plaintiff's physical and mental impairments.  Doc. 46-14. The EOIR referenced the "VA Benefits Summary letter," the VA's "Disability Breakdown Letter," **and** Plaintiff's therapist's letter.  *Id*.  With respect to the therapist, the EOIR detailed Plaintiff's "mental health diagnoses" and the therapist's opinion regarding Plaintiff's inability to interact with her support system if she was "'required to reside in Virginia[.]'" *Id*. at 3.  Also, the EOIR addressed Plaintiff's DOJ 100A Reasonable Accommodation form wherein Plaintiff discussed her anxiety and depression and the related request to work remote from Orlando.  *Id*.

Considering the foregoing, there is simply no basis for Plaintiff's position that the EOIR based the denial "solely on [Plaintiff's] vaso-vagal syncope" as she contends.  Plaintiff's representation otherwise is a misreading or misinterpretation of the denial.[8]  The Court, therefore, does not find that the EOIR's alleged failure to consider Plaintiff's mental impairments is a reason to grant summary judgment.

---

[8] In Plaintiff's Reply to the Response, Plaintiff attempts to slightly back off her representations regarding the denial.  Plaintiff states that Plaintiff's "Counsel acknowledges that he could have been clearer in addressing EOIR Reasonable Accommodation's failure to consider [Plaintiff's] mental health conditions in the denial of [Plaintiff's] request for reasonable accommodation." Doc. 51 at 3.  Counsel states that he apologizes for the confusion but then claims that "Defendant is not correct in contending that EOIR considered [Plaintiff's] mental impairments in its decision." *Id*.  Plaintiff argues that "simply reciting her mental health conditions in the denial letter is not enough." *Id*.  The Court, however, is not persuaded that the true nature of Plaintiff's argument as set forth in the Motion was that the EOIR discussed the mental impairments but did not sufficiently consider them.  In any event, assuming *arguendo* that the Motion can be construed to include Plaintiff's newest argument, the Court does not agree with Plaintiff that the denial reflects that the EOIR did not adequately consider the mental impairments.  *See* Doc. 46-14.  And with respect to Plaintiff's contention that the denial was insufficient because the EOIR needed to say more about the disabilities, Plaintiff does not cite to law in support of that position.  Doc. 51 at 3 to 4.  In other words, Plaintiff has not established that she is entitled to summary judgment based on the theory that the EOIR failed to consider the disability.

Plaintiff next argues that the "EOIR abandoned its duties under the Rehabilitation Act by also not engaging in an interactive process with Plaintiff to help fashion an accommodation that was acceptable to both EOIR and [Plaintiff]." Doc. 46 at 22. Plaintiff gives very limited attention to this point and the Court does not find that she satisfies her burden for relief for several reasons.

As an initial matter, Plaintiff provides no real analysis under the law regarding the need for an interactive process or an employer's failure to provide or engage in such a process. Plaintiff cites to *Okafor v. Infusery Am. Inc.*, 2023 WL 3563600, at 11 (M.D. Fla. Mar. 6 2023), for the general contention that "the employee has the burden to establish that a reasonable accommodation exists before an employer has the duty to engage in an interactive process with the employee to identify the employee's limitations or before the employer has a duty to establish that it could not provide the requested accommodation because of undue hardship." *Id*. at 17. Plaintiff then states in a conclusory manner that she "*notes* that EOIR had a duty to engage in an interactive process with [Plaintiff] to determine if some other form of accommodation, such as: temporarily remotely hearing RIAC cases from Florida would have alleviated [Plaintiff's] mental impairments so that she could continue to perform her job and been more acceptable to EOIR. EOIR did not do this and again abandoned its duties under the Rehabilitation Act." Doc. 46 at 23 (emphasis added). Plaintiff's notation and statement, with no citation to authority or analysis, is not enough. *See* Local Rule 3.01(a).

Further, even if Plaintiff adequately discussed the law on this issue, the Court is not convinced that the record supports Plaintiff's position as it relates to a request for summary judgment. In Plaintiff's "Undisputed Material Facts" section, Plaintiff claims that it is undisputed that "[a]t no time during the reasonable accommodation process did EOIR engage in an interactive process involving discussions with [Plaintiff] to determine if another form of reasonable

accommodation would alleviate the problems caused by [Plaintiff's] mental conditions."  Doc. 46 at 11.

Under the ADA or Rehabilitation Act, "[t]he employee bears the 'modest' burden of identifying his disability and suggesting how the accommodation will overcome his physical or mental limitations."  *Cooke v. Carpenter Tech. Corp.*, 2022 WL 17730393, at *2 (11th Cir. Dec. 6, 2022) (quoting *Owens v. Governor's Off. Of Student Achievement*, 52 F.4th 1327, 1327)). "After the employee provides this information, the employer must 'initiate an informal, interactive process' with the employee to discuss the employee's specific limitations, explore potential accommodations, and select the most appropriate accommodation for both the employer and the employee."  *Id.*

The record reflects that once Plaintiff submitted the request for the accommodation but before the EOIR issued the denial, the EOIR went back to Plaintiff to seek additional information regarding the request.  Doc. 46-5 at 2.  Plaintiff submitted documentation, the EOIR clearly reviewed the material, and the EOIR ultimately denied the request.  Doc. 46-13.  The EOIR then provided a follow-up letter to Plaintiff to describe in more detail the basis for the denial.  Doc. 46-14.  At the conclusion of the denial letter, the EOIR advised Plaintiff to review her "component's" policy on remote work and contact her supervisor if she had questions.  Doc. 46-14 at 3.  Further, the EOIR advised Plaintiff that she may request a change of duty station and stated that "there are a variety of programs available to Department of Justice employees" including alternate work schedules, telecommuting/alternate work locations, job sharing, emergency child-care services, and the Employee Assistance Program.  *Id.*; *see also* 46-23 at 9.

Based on the foregoing, Plaintiff has not demonstrated that summary judgment is appropriate based on her interactive process argument.  The Court does not find that the parties'

exchange was all that was required under the Rehabilitation Act, but Plaintiff certainly does not provide a sufficient analysis with supporting authority to the contrary, nor does she establish that the undisputed facts lead to a conclusion that the EOIR failed to adequately engage in the process as she claims.  In short, Plaintiff's perfunctory statement is not enough to obtain relief at this juncture.[9]

### 2.    Failure to Provide a Reasonable Accommodation

But even though the Court finds that summary judgment in favor of Plaintiff is not due to be granted based on Plaintiff's two arguments related to the substance of the EOIR's denial or the alleged failure to engage in the interactive process, that does not mean that Defendant has established entitlement to relief on the disability claim.  Plaintiff also claims in her Motion that she is entitled to summary judgment because Defendant failed to provide a reasonable accommodation in violation of the Rehabilitation Act.  Since Defendant presents the inverse of this argument in its Motion, the Court will address the parties' positions together.

"An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability — unless doing so would impose undue hardship on the employer." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  It does not appear that the parties dispute Plaintiff's ability to demonstrate that she is disabled, and Defendant makes no argument regarding undue hardship.  Docs. 45, 46. The issue comes down to whether Defendant violated the Rehabilitation Act when it denied

---

[9] Defendant argues in the Response to Plaintiff's Motion that the EOIR engaged in an interactive process by going back to Plaintiff with alternatives to the requested accommodation.  Doc. 47. Plaintiff does not respond to that argument in her Reply.  *See* Doc. 51.  As such, it may be that once Plaintiff realized that Defendant disputed her characterization of that "fact," she abandoned the argument as a basis for summary judgment.  Either way, the Court is not convinced that there is no genuine dispute of fact on this issue.

Plaintiff's request for an accommodation.  As to that question, based on the briefing before the Court, the Court finds that there is a genuine dispute of material fact.

The parties agree that Plaintiff submitted a request to continue with her position with the RIAC as a UCIJ but through remote means in Orlando, Florida.  In the request and the supporting documents, Plaintiff provided her physical and mental impairments and explained that if she was permitted to work remote from Orlando, then she would receive "the support [she] need[ed] to reduce [her] anxiety and depression, thus improving [her] mental health and preventing [her] from having all of these cascading symptoms that ultimately result in the vaso-vagal response. . .."  Doc. 46-14 at 2 to 3.

The parties also agree that the EOIR denied the request.  According to the denial:

> The purpose of accommodations is to remove workplace barriers and to assist qualified individuals with a disability to perform the essential functions of their position.  After a complete review of the documentation you submitted, we have determined that your request for reasonable accommodations is not one that is intended to remove a *workplace* barrier.   In other words, a reasonable accommodation in the form of a grant of remote work from Orlando, Florida would not serve the purpose of removing workplace barriers to allow you to perform the essential functions of your position.  Accordingly, we cannot grant your request to work remotely from Orlando, as your request is beyond the scope of Reasonable Accommodations.

Doc. 45-7 (emphasis in original).

Defendant states that based on the foregoing it is entitled to relief because the requested accommodation would not remove the workplace barrier as reflected in the EOIR's denial.  Doc. 45 at 18.  Specifically, Defendant contends that "[t]he essential functions of Plaintiff's job as a Unit Chief Immigration Judge included; the regular duties of a traditional immigration judge with supervisory responsibility for team of support personnel, including an attorney and a legal assistant.'"  *Id*.  Defendant contends that it is entitled to summary judgment because "Plaintiff

sought to eliminate an essential function of her job: supervisory responsibility for a team of support personnel." Doc. 45 at 18.

Indeed, at first blush, it seems that a move to Orlando to work remote may have an impact on a UCIJ's ability to supervise employees. But it appears that the "workplace barrier" Plaintiff sought to remove or wanted an accommodation for was her location and she did not directly seek removal of her supervisory duties. In fact, Plaintiff submitted a plan regarding her duty to supervise as part of the accommodation request. Doc. 46-4 at 2.

Perhaps the EOIR determined that changing Plaintiff's location would not work because of the supervisory function and that is what it meant by "remote work from Orlando, Florida would not serve the purpose of removing workplace barriers to allow you to perform the essential functions of your position." But the record is not clear on this issue and therein lies the genuine dispute. The record reflects that the Reasonable Accommodation Coordinator in the Office of the General Counsel makes the decision regarding a request for a reasonable accommodation without outside input. Doc. 46-2 at 60, 62. On the decision to grant or deny the request, the Reasonable Accommodation Coordinator would not consult the deputy director or the director as it is an independent process. *Id*. at 62. Michelle Curry was the Reasonable Accommodation Coordinator during the relevant time and issued the letter detailing the denial of Plaintiff's request. Doc. 45-7. at 2. While Plaintiff and Defendant both submit evidence regarding other current and former EOIR employees' opinion on the UCIJ's supervisory role and Plaintiff's ability or inability to work

remote as a UCIJ, Michelle Curry issued the denial letter and said nothing about the supervisor issue, and neither side deposed Michelle Curry.[10]

And based on the record, there is at least a triable issue as to whether the request for accommodation was reasonable, and Defendant violated the Rehabilitation Act by denying it. Namely, the record reflects that Plaintiff had the technical ability to remote into Richmond, the EOIR approved requests to work remote as a reasonable accommodation for a disability, and the EOIR approved remote work for judges. Doc. 45-11 at 95. Plaintiff's supervisor, Assistant Chief Immigration Judge Megan Herndon, testified that remote work would be functionally feasible for Plaintiff. Doc. 45-17 at 14. As such, it seems that the technical means existed to allow Plaintiff

---

[10] The record includes Michelle Curry's "Affidavit by Interrogatory." Doc. 50-23. Michelle Curry executed the affidavit after she left employment with the EOIR. *Id.* at 4. The affidavit reflects Michelle Curry's responses to the following inquiries:

> 19. What are the essential functions of the Complainant's position? *I no longer have access to her position description to provide this information.*
> 20. Does Complainant's disability affect her performing these functions? If so, how? Complainant's disability does not affect her performing the essential functions of her position except that she might have had to reschedule a hearing or take sick leave if she fainted.
> 21. Is the Complainant qualified to perform the functions she is assigned? If not, why not? Yes.
> 22. Have you assessed how Complainant's disability affects the major functions and activities of her position? If so, what were your findings? If not, why? Yes. Syncope would affect the essential functions of her position like any other illness a person would have. It is not a chronic condition and any instance of syncope would resolve without a long-term interruption to job duties.
> 23. Have you made efforts to identify and provide accommodations for Complainant? If so, what, and when (dates)? If not, why not? As I recall, Complainant's requested accommodation was to transfer to another duty location. Complainant's essential functions would not have changed and this would not removed a workplace barrier.

Doc. 50-23 at 5 (emphasis added). The Court is not satisfied that a review of the foregoing means that the parties have demonstrated that there is a lack of dispute on this issue and that either side is entitled to summary judgment.

to work remotely, and it is not clear on this record that Plaintiff's supervisory responsibilities prevented the EOIR from granting Plaintiff's request.

Unfortunately, Defendant's brief on this issue does not assist the Court. Specifically, in support of its statement that Plaintiff sought to eliminate her supervisory role via the requested accommodations, Defendant cites to Plaintiff's "Affidavit by Interrogatory" wherein she stated that "becoming a traditional immigration judge would remove supervisory duties and also relieve the stressors that trigger [Plaintiff's] mental health condition." Doc. 45 at 18 (citing 45-17 at 5). Plaintiff said this in response to the inquiry: "To your knowledge, can you perform the essential functions/duties of your position with or without a reasonable accommodation?" *Id*.

But as Defendant concedes, Plaintiff was attempting to return to Orlando through several "vehicles," including though an application to be a new immigration judge, and it seems plausible that Plaintiff conflated her requests in answering that interrogatory. Even so, assuming Plaintiff also wanted to become an immigration judge through accommodation, the EOIR's denial makes clear that the request before it was Plaintiff's request to remote work as a UCIJ. Doc. 45-7 at 1. As such, there is little clarity—and an apparent dispute—over whether Plaintiff attempted to remove the supervisory function of her job through the request for accommodation. Defendant adds that "even if there were vacancies at the Orlando Immigration Court for traditional Immigration Judge positions, 'while reassignment to a vacant position is a reasonable accommodation identified by the ADA, the ADA does not require reassignment without competition.'" Doc. 45 at 19. Defendant explains that there were no vacancies in Orlando, and Plaintiff was not alone on either the hardship register or the traditional register. *Id*. But, again, the EOIR's denial letter related to the request to work remotely and did not address the separate transfer registers, nor did it specify that the vacancies or other competition had something to do

with the denial.  Based on the foregoing, the Court finds that Defendant has not demonstrated entitlement to relief.

And for the same reasons, Plaintiff's cross argument for summary judgment on this issue is due to be denied.  The record reflects that Plaintiff could have the technical means to remote into Richmond and that remote work could be a reasonable accommodation, but that does mean that Defendant denied a reasonable request as a matter of law.  Despite Plaintiff's assertions to the contrary, there are distinctions between the IJ and the UCIJ positions and Plaintiff would still be a supervisor as a UCIJ for the RIAC even if she remoted in from Orlando.  Further, the EOIR denied Plaintiff's request upon review of her disabilities and determined that her specific request would not remove workplace barriers to allow her to perform her essential functions of her position.  In other words, even though the EOIR may have permitted other judges to remote work as an accommodation, the EOIR reviewed Plaintiff's request based on her own workplace barriers and position and determined that Plaintiff's request was due to be denied.  There remains a genuine dispute of material fact as to the reasons for the denial.

In sum, the Court is not convinced based on the parties' arguments or the record that either party is entitled to summary judgment on this issue.

### b.    Sex, Age, and National Origin Discrimination Claims – Title VII and the ADEA

In Counts II through IV, Plaintiff alleges that Defendant discriminated against her on the basis of sex, age, and national origin in violation of Title VII and the ADEA.  Doc. 17.[11]  Defendant seeks summary judgment on these claims.

---

[11] In Count IV, Plaintiff brings the age discrimination claim under Title VII.  Doc. 17 at 14 to 15. Title VII, however, does not cover age discrimination.  *See* 42 U.S.C. § 2000e-16(a).  Plaintiff references the Age Discrimination in Employment Act in other areas of the Amended Complaint.

Under Title VII's federal-sector provision, "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  "The ADEA has a similar federal-sector provision, which provides that personnel actions affecting agency employees aged 40 years or older shall be made free from any 'discrimination based on age.'"  29 U.S.C. § 633a(a).  "Personnel actions include most employment-related decisions, such as appointments, promotions, work assignments, compensation, and performance reviews."  *Durr v. Sec'y of the Dep't*, 2022 WL 2315086, at *2 (11th Cir. June 28, 2022)  (citing *Babb v. Wilkie*, 140 S.Ct. 1168, 1172-73 (2021)).[12] "'[F]ree from any discrimination' language means that personnel actions must be made in 'a way that is not tainted by differential treatment based on a protected characteristic.'"  *Terrell v. Sec'y, Dept. of Veterans Affs.*, 98 F.4th 1343, 1351–52 (11th Cir. 2024) (quoting *Babb II*, 992 F.3d at 1199).  "So 'a federal employer violates [Title VII] if it allows race [or national-origin] discrimination to contribute to any personnel action,' even if that discrimination was not the but-for cause of the ultimate decision."  *Id*. at 1352 (quoting *Buckley v. Sec'y of the Army*, 97 F.4th 784, 793 (11th Cir. 2024)).

In Counts II through IV, Plaintiff contends that Defendant violated her rights under Title VII and the ADEA in three ways.  Doc. 17.  Plaintiff alleges that (1) Defendant is liable because it denied her hardship transfer request(s) even though others similarly situated were permitted to

---

Defendant does not raise this issue, and it appears that Plaintiff's reference to the other law was another typographical error.  The Court will, therefore, analyze the claim under the ADEA.

[12] "The Eleventh Circuit recently held that the Supreme Court's decision in *Babb v. Wilkie*, 140 S. Ct. 1168  (2020) (*Babb* I)—which interpreted the nearly identical federal-sector provision of the [ADEA]—is applicable to Title VII federal sector cases."  *Bell v. McDonough*, 2022 WL 485224, at *6 (M.D. Fla. Feb. 17, 2022) (citing *Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193 (11th Cir. 2021) (*Babb* II).

transfer; (2) Defendant created a working condition so intolerable that she was forced to resign; and (3) Defendant improperly failed to select her as an immigration judge on two separate occasions. *Id.*[13]

The Court agrees with Defendant that it is entitled to summary judgment but only to a limited degree.

### 1. Hardship Transfer Request

With respect to Plaintiff's claim that Defendant discriminated against her on the basis of sex, age, and national origin when it denied her hardship transfer request(s), there is no evidence of discrimination.

The Eleventh Circuit recently set forth the following guidance for summary judgment after the seminal cases *Babb I* and *II, Buckley*, *Terrell*, and *Rosado*:[14]

> A federal employee may present circumstantial evidence using *McDonnell Douglas*' first step—the prima facie case—to support his Title VII discrimination claim. *See Rosado*, 127 F.4th at 866 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).9 We have "assum[ed] without deciding" that "a prima facie case of some type is alone enough to sustain a federal employee's discrimination claim." *Id.* at 866-67. But that prima facie case "must reasonably allow for an inference that discrimination figured into the decision-making process in some way." *Id.* at 867.
>
> To establish a prima facie case, the plaintiff must show: (1) he belongs to a protected class, (2) he experienced an adverse employment action, (3) he was qualified to perform the job in question, and (4) his employer treated similarly

---

[13] Plaintiff also alleges in Count I that Defendant constructively discharged Plaintiff and the denial of Plaintiff's reasonable accommodation resulted in Plaintiff's working conditions becoming so intolerable that she resigned.  Doc. 17 at 12.  Plaintiff does not mention constructive discharge or intolerable working conditions in her Motion and so it is not a "cross-motion" in that respect.  *See* Doc. 46.  Even so, with respect to Defendant's request for summary judgment, Defendant has not demonstrated that there is no genuine dispute as to any material fact based on the constructive discharge theory set forth in Counts I or IV as discussed *infra*.

[14] *Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 858 (11th Cir. 2025), is another recent Eleventh Circuit published decision which addressed summary judgment on a federal employee's claim of discrimination under Title VII and the ADEA.

situated employees outside of his class more favorably. *Tynes*, 88 F.4th at 944. The fourth step requires the plaintiff to "present evidence of a comparator—someone who is similarly situated in all material respects." *Jenkins*, 26 F.4th at 1249 (internal quotation marks omitted). A "similarly situated" comparator typically will have engaged in the same basic conduct (or misconduct); be subject to the same employment policy, guideline, or rule; have the same supervisor(s); or share the plaintiff's employment or disciplinary history. *Lewis v. City of Union City*, 918 F.3d 1213, 1227-28 (11th Cir. 2019) (en banc).

The mere fact that someone outside the protected class was subject to a more favorable employment decision does not "give us enough information" to "infer that unlawful discrimination 'played any part' in the process that led to that decision." *Rosado*, 127 F.4th at 868. "An employer is well within its rights to accord different treatment to employees who are differently situated in 'material respects'—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories." *City of Union City*, 918 F.3d at 1228.

If the federal employee has other evidence to show that discrimination "played any part" in the decision-making process, he need not present comparator evidence. *Rosado*, 127 F.4th at 867. The employee may also demonstrate a "'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *City of Union City*, 918 F.3d at 1221 n.6. A "convincing mosaic" refers to a "variety of evidence" which collectively "strongly suggest[s]" that his employer's decisions were based on his race and national origin. *Poer*, 100 F.4th at 1337. Plaintiffs may point to suspicious timing, ambiguous statements, systematically better treatment of similarly situated employees, or evidence that the employer's justification for its action is pretextual. *See Jenkins*, 26 F.4th at 1250.

No matter which framework the employee pursues, we must answer the same "ultimate question"—"whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes*, 88 F.4th at 941.

*Jimenez v. United States AG*, 146 F.4th 972, 996-97(11th Cir. July 21, 2025).

With respect to the failure to grant transfer aspect of Counts II through IV, Plaintiff attempts to demonstrate that she was discriminated against based on both comparator evidence and circumstantial evidence. The Court is not persuaded by either.

As to the comparators, Plaintiff states that it is undisputed that the EOIR granted nine hardship transfer requests for "IJs from 2021 to 2023." Doc. 50 at 5. Plaintiff provides

documentation related to these transfers to reflect the nature of the requests. Docs. 50-30 to 50-38. Plaintiff concedes that the documents do not reflect that the transfer requests were approved but asserts that public information confirms that at least eight of the nine are at their requested locations. Doc. 50 at 5 n.2. A review of the Reply reflects that Defendant does not seem to dispute that the hardship transfers were approved. *See* Doc. 52.

Even so, the Court agrees with Defendant's position that Plaintiff does not provide a meaningful analysis with respect to the comparator issue as it pertains to her transfer request. "The Eleventh Circuit held that a federal-sector plaintiff's *prima facie* case 'must include 'meaningful comparator analysis' consistent with *Lewis*." *Turner v. Yellen*, 2025 WL 967167, at *11 n.17 (N.D. Ala. Mar. 31, 2025) (quoting *Rosado*, 127 F.4th 858, 856). "'Meaningful comparator analysis' requires a showing that the plaintiff and his comparators are 'similarly situated in all material respects.'" *Rosado*, 127 F.4th at 868 (quoting *Lewis I*, 918 F.3d at 1226).

In a vague and generic fashion, Plaintiff claims that the "circumstances of another employee do not need to be exactly the same for the employee to constitute a comparator" and "Judges 2, 4, and 9 who each had hardship transfers approved were very similar, but less compelling circumstances than [Plaintiff] in that their requests were based almost exclusively on the health conditions of their parents or parents in law." Doc. 50 at 16. Without further explanation, Plaintiff adds that "Judge 1's request is based on circumstances that pale in comparison to the hardship facing [Plaintiff]." *Id*.

Plaintiff provides no legal analysis in support of these assertions and basically leaves the Court to sift through the evidence to make the key comparisons. And Plaintiff's problem is that she ignores the fact that the record reflects that there **are** key distinctions between these hardship transfer "comparators" and Plaintiff. Plaintiff states that it is undisputed that "[t]he duties of a

UCIJ are essentially the same as the duties of an Immigration Judge." Doc. 50 at 3. For support of this statement, Plaintiff cites to Deputy Director Mary Cheng's testimony that the Immigration Adjudication Centers are not "generally" different than Immigration Courts and "immigration judges, generally, have the same function, which is to make determinations on cases that are brought by DHS." Doc. 50-2 at 16, 19 to 20. In addition to those generalities, Deputy Director Mary Cheng testified as follows:

> Q: AND THIS -- THIS IS THE FIRST TIME THAT THE TERM UNIT CHIEF IMMIGRATION JUDGE HAS BEEN USED. TELL ME WHAT THAT MEANS.
>
> A. A UNIT CHIEF IMMIGRATION JUDGE IS SIMILAR TO A LINE IMMIGRATION JUDGE. LIKE WHAT YOU ASKED ME EARLIER ABOUT WHAT A -- WHAT AN IMMIGRATION COURT DOES. SO A UNIT CHIEF IMMIGRATION JUDGE WILL PRESIDE OVER CASES BROUGHT BY DHS TO DETERMINE WHETHER OR NOT AN INDIVIDUAL IS EITHER INADMISSIBLE OR DEPORTABLE OR REMOVABLE FROM THE UNITED STATES. IF THEY MAKE A FINDING THAT THE INDIVIDUAL IS, IN FACT, REMOVABLE AS CHARGED, THE INDIVIDUAL THEN CAN SEEK RELIEF. THE IMMIGRATION JUDGE WILL HOLD A HEARING TO DETERMIN WHETHER OR NOT THAT INDIVIDUAL GETS TO REMAIN IN THE UNITED STATES OR HAS TO LEAVE THE UNITED STATES. THAT'S A VERY SIMPLE EXPLANATION. **IN TERMS OF A UNIT CHIEF IMMIGRATION JUDGE, THEY WERE DIFFERENT FROM LINE IMMIGRATION JUDGES BECAUSE THEY WERE ACTUALLY MANAGERS OR SUPERVISORS. THE IDEA -- THAT THEY WOULD SUPERVISE THEIR HEARING UNIT, WHICH SHOULD HAVE CONSISTED OF A LAW CLERK, A LEGAL ASSISTANT, MAYBE ANOTHER STAFF MEMBER, AND THEN THE IMMIGRATION JUDGE. THE UNIT CHIEF IMMIGRATION JUDGE. SO UNIT CHIEF IMMIGRATION JUDGES, WHEN THEY ARE HIRED, UNDERGO MANAGEMENT TRAINING, UNLIKE A LINE IMMIGRATION JUDGE THAT DOESN'T GO THROUGH MANAGEMENT TRAINING.**
>
> ***
> Q: COULD [THE UCIJ] GO AND BE A LINE IMMIGRATION JUDGE?
>
> A: I DON'T KNOW THE ANSWER TO THAT BECAUSE THEY'RE ON TWO DIFFERENT POSITION DESCRIPTIONS. LINE IMMIGRATION JUDGE HAS A DIFFERENT POSITION DESCRIPTION OR WHAT WE WOULD REFER TO AS A PD. AND THE UNIT CHIEF IMMIGRATION JUDGE HAS A

DIFFERENT APPOINTMENT DESCRIPTION. IT'S ALSO A DIFFERENT APPOINTMENT, THOUGH.

Doc. 50-2 at 65 to 66, 67 (all-caps in original, bolded emphasis added).

Indeed, the EOIR's memorandum for the Acting Attorney General reflects that the UCIJ "combines the regular duties of a traditional immigration judge (IJ) with supervisory responsibility for a team of support personnel, including an attorney and a legal assistant." Doc. 45-2 at 4. In fact, Plaintiff testified that the UCIJ position was a "supervisory role," and the UCIJ supervises a paralegal and an assistant. Doc. 46-21 at 10. Plaintiff also testified that there is no Unit Chief Immigration Judge in the Orlando Immigration Court. *Id*. at 14. Without reaching Defendant's contention that Plaintiff's affidavit is a "sham affidavit," Plaintiff attests in the affidavit that she had a clerk assigned to her and she was the "only judge in the RIAC who had a [judicial law clerk] assigned to the judge." Doc. 50-39.

Plaintiff does not sufficiently address these glaring, material distinctions between the comparators and herself. Plaintiff cannot simply create a genuine dispute by claiming with no support that the comparators are "essentially the same." And while Plaintiff's briefing on the comparator issue is essentially non-existent, the Court has reviewed the evidence and none of these alleged comparators appear to be UCIJs.

Based on the foregoing, the Court is not persuaded that Plaintiff demonstrates, based on comparator evidence, that she was discriminated against. *See Turner*, 2025 WL 967167, at *13 n. 19 (noting that even though the plaintiff attempted to rely on a comparator, the individual was not similarly situated, in part, because the individual "held a very different position tha[n] [the plaintiff]. . . [the individual] was a supervisor, and [the plaintiff] has never been employed as a supervisor"); *see also McHenry v. McDonough*, 2021 WL 11719873, at *9 (N.D. Ga. Oct. 7, 2021) (finding that the plaintiff alleged no facts that might show how the alleged comparator was

similarly situated, "such as holding the same position as [the plaintiff] or even reporting to the same supervisor") (citing *Bartholomew*, 2020 WL 321372, at *6).

Plaintiff then seems to switch gears in the Response and claims that she can still proceed through the convincing mosaic of circumstantial evidence theory. As an initial matter, Plaintiff apparently contends that proof of her differential treatment lies within (1) the EOIR's alleged reliance on a defunct collective bargaining agreement and (2) testimony that the EOIR did not actually follow any guidelines concerning transfers. Doc. 50 at 15. But, again, Plaintiff provides no legal analysis in support of her apparent theory that Defendant's inconsistent decision making is circumstantial evidence of discrimination. Even if Defendant did not follow guidelines or standards when it decided who would be transferred, Plaintiff makes no effort to explain the legal relevance of Defendant's failure to do so. In other words, assuming Plaintiff is right that Defendant "had no standards with respect to granting either regular or hardship transfers," Plaintiff provides no authority to show that a lack of policy or standard is circumstantial evidence of discriminatory intent.

Plaintiff summarily states: "What is clear is that the Orlando Immigration Court was adding an additional 10 immigration judges. . . and [Plaintiff's] transfer did not occur after there was some communication with Mary Cheng, who previously had shown animus toward [Plaintiff]." Doc. 50 at 15. Plaintiff leaves the Court guessing as to what she means regarding Deputy Director Cheng's "shown animus" because she provides no citation to the record. *See id.*[15]

Defendant seems to think that based on Plaintiff's affidavit her evidence of animus is Deputy Director Mary Cheng's statement, "Why doesn't she just do her job?" Doc. 52. The Court

---

[15] Plaintiff cites to her "Additional Material Facts" to support the portion of this statement related to her application for a judgeship but does not otherwise provide reference to the record related to Deputy Director Cheng. Doc. 50 at 15 (citing Doc. 15 at 6, ¶ 21).

is not convinced that this statement is evidence of "animus," especially as it relates to Defendant's failure to grant the hardship transfer. Deputy Director Cheng's alleged statement related to Plaintiff's attempts to manage her docket (*See* Doc. 50-39 at 2), and Plaintiff simply offers nothing to infer from this comment that there was discriminatory intent when the EOIR denied her hardship transfer. In short, the Court is not satisfied that there is a "mosaic" or that it is otherwise "convincing." *See Rosado*, 127 F. at 866 (finding that the plaintiff failed to show that discrimination on the basis of race, national origin, or age "played any part" in the employment decisions); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.") (citation omitted).[16]

Having closely reviewed the record, the Court finds that there is no evidence to support Plaintiff's claim that age, sex, or national origin played a role in the decision to deny the hardship transfer. As such, to the extent Counts II through IV are based on this theory, Defendant is entitled to summary judgment.

## 2. Working Conditions

While Defendant is entitled to summary judgment with respect to the hardship transfer issue, Defendant has not met its burden with respect to Plaintiff's claim that she was also constructively discharged. In Counts I through IV, Plaintiff argues that Defendant discriminated

---

[16] Plaintiff states in her affidavit that she perceived the comment to be adverse and showed animus. Doc. 50-39 at 2. If it is Plaintiff's position that her perception alone with nothing more to tie the comment to the hardship transfer denial is enough to defeat summary judgment, then she should have cited to the record and briefed the issue for the Court. Plaintiff cannot survive summary judgment through her loose reference to Defendant's failure to follow any guidelines in its decision making or a vague statement regarding Deputy Director Cheng's "shown animus."

against Plaintiff in that it constructively discharged Plaintiff from employment and made working conditions so intolerable that she was forced to resign her position as UCIJ.  Doc. 17 at 11 to 16.

Defendant asserts that the evidence reflects that Plaintiff resigned and contends, with no citation to authority, that "[t]here is no basis or precedent supporting Plaintiff's assertion that her voluntary resignation legally constitutes constructive discharge."  Doc. 45 at 15.  But, "'[c]onstructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'"  *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (quoting *Munday v. Waste Mgmt. of NA, Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) ; *see also Zarza v. Tallahassee Hous. Auth.*, 686 Fed. App'x, 747, 753 (11th Cir. Apr. 26, 2017) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions so unbearable that a reasonable person in that position would be compelled to resign.").  The Court agrees with Defendant that the evidence shows that Plaintiff resigned, but to the extent Defendant argues that a constructive discharge cannot occur when a plaintiff quits, that assertion is not accurate.[17]

Further, the Court is not satisfied that Defendant has met its burden at summary judgment as to these claims.  Defendant provides the Court with the general law on constructive discharge and insists that Plaintiff resigned and was not forced to quit but does not conduct an analysis of the facts surrounding this theory of liability.  The evidence before the Court reflects that the parties engaged in a significant amount of discovery on Plaintiff's work conditions/discrimination claim but Defendant raises the issue in a perfunctory fashion on summary judgment.  *See* Doc. 45.  And Plaintiff challenges the request for summary judgment on this theory in her Response, but Defendant does discuss Plaintiff's arguments in the Reply.  *See* Doc. 52. Defendant's perfunctory

---

[17] The Court says "to the extent" because Defendant's intention with this statement is not clear.

conclusion that "[t]here is no evidence that EOIR 'deliberately made an employee's working conditions intolerable and thereby force[d] Plaintiff to quit" does not help the Court.[18]

To be clear, the Court does not find that Plaintiff's allegations and evidence demonstrate that her working conditions were so intolerable that she was forced to resign, but Defendant's briefing is insufficient to establish entitlement to summary judgment.

### 3. Non-Selection for Immigration Judge Positions

Even though the Court agrees with Defendant that there are material differences between the immigration judge and the UCIJ positions, and, therefore, it appears that immigration judges are perhaps not comparators with respect to disparate treatment and Plaintiff's requests for transfer, the Court finds that the briefing and record is insufficient for the Court to decide the issue of whether there are appropriate comparators in relation to for Plaintiff's attempt to obtain a new position as an immigration judge.

In its Motion, Defendant argues that the UCIJ role is distinct and "[t]he relevant inquiry is not whether Plaintiff had the skills necessary to serve as a traditional immigration Judge; it is whether EOIR was obligated to transfer a UCIJ on a term appointment in non-public facing

---

[18] Even if Defendant provided more discussion on this issue, the Court is not satisfied that summary judgment is appropriate. Namely, as discussed in Plaintiff's Response to Defendant's Motion, there is more to Plaintiff's discrimination claims than just the failure to grant a hardship transfer issue. There is evidence that the docket was the largest at RIAC, as compared to the white male colleagues in Richmond, and it was at least the court administrator's opinion that no immigration judge could have successfully handled Plaintiff's workload. Docs. 46-20 at 9; 46-21 at 10, 11, 18, 66 to 68; 50-16 at 6. The management of Plaintiff's docket was a source of her stress and Plaintiff attempted to manage the docket and made efforts to issue a certain type of scheduling order to "reset" the cases. Docs. 45-17 at 5 to 6; 46-20 at 9; 56-16 at 5; [18] Plaintiff cites to evidence in the record that while the EOIR permitted a white male UCIJ in the RIAC to reset cases, Plaintiff was not allowed to reset cases. Docs. 46-20 at 9; 50-16 at 5, 6. It is, therefore, Plaintiff's position that she was set up to fail while others similarly situated were treated differently and given tools that allowed them to go forward with the position. Without more of an analysis on this issue, the Court is not inclined to grant relief in Defendant's favor.

adjudication center into a public-facing court that had no vacancies when that UCIJ's asserted hardship stemmed from circumstances known before accepting the job." Doc. 45 at 17 to 18. The Court agrees with Defendant with respect to the transfer aspect of Plaintiff's claim, but Defendant seems to gloss over the allegations in which Plaintiff claims that the EOIR failed to select her when she first applied to be an immigration judge in October 2021, and Defendant doesn't analyze the issue in relation to Plaintiff's attempt to obtain a new term of employment after she resigned in 2022. Specifically, Plaintiff alleged in the Amended Complaint that she was passed over for selection as an immigration judge *twice*. Doc. 17 at 14, 13, 15.

Plaintiff's claims do not appear to be narrowed to the transfer issue, and Plaintiff asserts that there is at least one comparator who got the Orlando position when Plaintiff first applied and was still employed as a UCIJ in Richmond. In particular, the record includes a document dated August 5, 2022, wherein the EOIR announced the appointment of Raphael G. Rojas as an immigration judge for the Orlando Immigration Court. Doc. 50-19 at 6. Plaintiff concedes that it is not clear which vacancy announcement number Judge Rojas applied for (Doc. 50 at 2), and it appears the record is not clear on this point. *See* Docs. 50-3 at 70; 52-1 at 2.[19]

---

[19] Defendant cites to the following excerpt to demonstrate the lack of evidence:

> Q: Understood. Do you have any evidence that you necessarily had to be the best candidate?
> A: I'm not sure what you're asking.
> Q: I'm asking you –
> A: Like, I don't have comparisons with other people. I don't have information to answer your question.

Doc. 45 at 20. Based on the foregoing, Defendant argues that Plaintiff has no evidence to support her contention that there was a decision to "unlawfully pass her over for particular employment." *Id*. at 21. While Plaintiff did not "have the information" the Court is not convinced that Defendant has demonstrated that there is no genuine dispute on this fact. The record reflects that there is a

Defendant does not address Judge Rojas in the Motion, but in the Reply, Defendant argues that "Plaintiff's repeated mention of IJ Raphael Rojas is misguided:  Rojas applied to a different vacancy announcement than Plaintiff and was hired as an IJ before Plaintiff ever made her first **accommodation** or **transfer** request for Orlando."  Doc. 52 at 3 (citing Doc. 52-1) (emphasis added).  There are a couple of issues with this statement.  Again, even Defendant agrees that Plaintiff's request for reasonable accommodation and transfer were different "vehicles" by which Plaintiff was seeking to relocate back to Orlando.  Doc. 45 at 3.  Judge Rojas' appointment pertains to a separate "vehicle" Plaintiff took to apply to become an immigration judge as a new hire.  Doc. 45 at 3.  So, the timing of the request for an accommodation and transfer are not apparently relevant.

Also, even if the timing of the hardship transfer request is somehow pertinent, according to Defendant's Motion, Plaintiff contacted the EOIR to request a regular and hardship transfer to Orlando on October 5, 2021.  Doc. 45 at 4.  The Office of the Attorney General's Order appointing Judge Rojas as an Immigration Judge is also dated October 5, 2021.  Doc. 52-1.  As such, the record is not clear as to which came first.

In any event, the hardship transfer request aside, as to Plaintiff's application for new hire, the record reflects that Plaintiff applied for or was not selected for the position "in October" or "in or about October 2021."  Docs. 45-13 at 4; 45-17 at 9; 50-9 at 3; 50-21 at 23.  The briefing is *again* lacking on this issue, but it seems that neither party has provided an exact date of Plaintiff's

---

comparator question regarding Judge Rojas' appointment and Plaintiff's lack of information statement alone does not refute that for purposes of summary judgment.

application and, therefore, this general time frame is all that is before the Court. Accordingly, to the extent it is Defendant's position that Judge Rojas is not a proper comparator because he was already hired for Orlando when Plaintiff applied, the record is not clear.[20] As a result, the Court is not satisfied that summary judgment is appropriate based on Defendant's vacancy/timing argument.[21]

Finally, Plaintiff also claims she was discriminated against because she was not selected as an immigration judge in 2023 after she resigned and applied again for the position. Defendant mentions in the "Statement of Undisputed Fact" section of the Motion that on January 31, 2023, Plaintiff applied for a new term appointment as an immigration judge and was selected for interviews. Doc. 45 at 7. Defendant states that the EOIR offered Plaintiff the position for Laredo,

---

[20] Also, Defendant states in the Reply that Deputy Director Cheng "explained that sitting Immigration Judges or Unit Chief Immigration Judges were not going to be offered positions for vacancy announcements 'because [EOIR] had to plus up. If we offered them the position, we wouldn't be able to increase the immigration court.'" Doc. 52 at 6. The Court follows Defendant's point, but Defendant does not state that Plaintiff was not selected based on this "plus up" issue. *See id*. And the excerpt Defendant quotes does not reflect that was the case. *See id*. The Court understands that Deputy Director Cheng gave a hypothetical to illustrate funding concerns, but the quotes do not demonstrate that the "staffing consideration" was a factor in the decision. And, again, if it is Defendant's position that it is entitled to summary judgment because Deputy Director Cheng gave this explanation, Defendant needed to say more about the law on this issue with a more adequate analysis.

[21] The Court notes that it appears that the Announcement Number associated with Plaintiff's application was IJ-11233723-21-AS. *See* Doc. 45-17 at 9. Attached to the Reply appears to be the job announcement for IJ-10999019-20-HH. Doc. 52-1 at 1. Following that document, is the Office of the Attorney General's order appointing Judge Rojas. *Id*. at 2. First, the appointment order does not reference the Announcement Number nor does the Request for Personnel Action Defendant has also attached. *See id*. at 2, 3. Second, assuming *arguendo* that Judge Rojas was selected under a different announcement number, Defendant has not demonstrated that the varying job announcement numbers alone mean Judge Rojas is an improper comparator. Defendant does not sufficiently analyze this issue with citation to authority. In any event, the record reflects that Plaintiff applied for and was not selected "in or about October" and, therefore, there is some dispute as to whether there was a vacancy when Defendant appointed Judge Rojas.

Texas or Jena, Louisiana but Plaintiff declined because she was only interested in the Orlando location.  *Id*.  Defendant provides an excerpt from the EEO denial of the claim and asserts that the EOIR did not hire any immigration judge into Orlando for that vacancy announcement.  *Id*. at 7, 8.[22]

Beyond this "undisputed fact," Defendant does not provide any analysis or even mention why the fact is relevant to its request for summary judgment.  Defendant also fails to discuss the 2023 non-selection in the Reply.  *See* Doc. 51.  The Court will not guess where Defendant is going with this point, and Defendant does not satisfy its burden by simply presenting something as an undisputed fact.  The movant bears the burden of establishing the absence of dispute over material facts.  *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

On the same note, it is not entirely clear if Judges Adler and Rojas—the two comparators—fall within all categories of the alleged discrimination (i.e. sex, national origin, and age).  *See* Doc. 17.  But the question of whether summary judgment is appropriate on these claims is before the Court on Defendant's Motion and not Plaintiff's.  So, for example, if these individuals are not younger than Plaintiff—Plaintiff alleges there are younger employees who were selected (Doc. 17 at 15)—Defendant does not raise that argument to the Court.  As such, the Court will not further reach the issue on who the proper comparators because there may be a genuine dispute.

---

[22] Relying on her own affidavit, Plaintiff argues that the EOIR never formally offered her the Texas or Louisiana positions and, and, instead, Human Resources called her after her final interview and "asked whether [Plaintiff] had any interest in being assigned to the Immigration Courts in Jena, Louisiana or Laredo, Texas."  Doc. 50-39.  Plaintiff states that she indicated that she was not interested and never received an offer for Orlando.  *Id*.

### c. Retaliation and Due Process Claims

In Count IV of the Amended Complaint, Plaintiff brings a due process claim and asserts that her rights were violated because Defendant failed to provide rules, policies, standards or guidelines for the evaluation of requests for hardship transfers. Doc. 17 at 15 to 16. While it appears that Defendant moves for summary judgment on the entirety of Plaintiff's claims, Defendant does not mention Plaintiff's due process claim. *See* Doc. 45.

Also, while not entirely clear because Plaintiff does not label it as a "Count," Plaintiff includes a section in the Amended Complaint entitled "Disability, Sex, National Origin and Age Discrimination by Retaliating Against Plaintiff for Filing a Complaint of Employment Discrimination." Doc. 17 at 16. Namely, Plaintiff alleges that Defendant subjected her to retaliation when it failed to select her for the immigration judge position in Orlando, Florida for which she applied in January 2023. *Id*. Defendant mentions in the introduction to the Motion that Plaintiff brings a retaliation claim and concludes the brief with a statement that "Plaintiff has not been discriminated against, nor has she been retaliated against." Doc. 45 at 2, 22. Defendant does not otherwise reference "retaliation" in the brief. *See* Doc. 45.

As discussed *supra*, Defendant discusses Plaintiff's 2021 non-selection but does not provide any analysis regarding her allegation related to the 2023 non-selection. In its introductory narrative, Defendant contends that no one was hired in Orlando for the 2023 position (Doc. 45 at 7), but then says nothing more about this claim in its discussion.

Since Defendant does not directly address Count V or the retaliation claim based on the 2023 non-selection, the Court finds it has failed to meet its burden for relief.

### d. Relief

Defendant briefly argues in its Motion, with no citation to authority, that Plaintiff seeks improper relief.  Doc. 45.  In part, Defendant argues that Plaintiff's request for "reinstatement" as a traditional immigration judge into the Orlando Immigration Court is not possible because Plaintiff was never a traditional immigration judge and never "instated" in Orlando.  Doc. 45 at 22.  The Court follows the logic, but Defendant cites to no authority on this issue.  *See id*.

Even so, the Court addressed the topic of relief at the August 28, 2025 hearing because Plaintiff clarified that she brings her disability claim pursuant to the Rehabilitation Act and not the ADA.  It was not entirely clear to the Court whether Plaintiff's clarification impacted her request for relief or whether reinstatement was available under the applicable law.  As such, the Court permitted the parties to submit supplemental briefing on the issue of whether reinstatement is an available remedy under the Rehabilitation Act.

Defendant filed a supplemental brief and, for the first time, argues that the power to appoint an immigration judge rests exclusively with the Attorney General.  Doc. 57.  But Defendant also includes the following footnote:

> While Congress has not waived the Government's sovereign immunity against monetary damages awards for § 504(a) violations, *see Lane v. Pena,* 518 U.S. 187, 192 (1996), declaratory relief, injunctive relief, and **reinstatement are sometimes available remedies.** *See, e.g., Laney v. Austin,* 2021 WL 825088, at*3 (M.D. Fla. Mar. 4, *2021) (citing Lanev Dep't of Defense, Missile Defense Agency,* 2019 WL 4749985 (N.D. Ala. 2019)).

*Id*. at 2 n.3 (emphasis added).  It is not clear, but it seems that Defendant represents that reinstatement might be an available remedy under the Rehabilitation Act but not appropriate under the circumstances of this case.  Also, with this footnote, Defendant seems to at least indicate that monetary damages are not available as an award due to immunity.

Since Defendant has raised these arguments for the first time in a Supplemental Brief and, therefore, Plaintiff has not had an opportunity to respond and Defendant's Motion is otherwise deficient on this issue, the Court finds that Defendant has not established entitlement to summary judgment.

## V.    CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1.  Defendant's Motion (Doc. 45) is **GRANTED in part** to the extent that Defendant is entitled to summary judgment with respect to Plaintiff's claim that Defendant discriminated against her on the basis of her sex, national origin, and age when it denied her request for a hardship transfer.  The reminder of the Motion (Doc. 45) is **DENIED**; and

2.  Plaintiff's Motion for Summary Judgment (Doc. 46) is **DENIED**.

**ORDERED** in Orlando, Florida on September 18, 2025.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE